IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Leroy A. Lovelace,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:18cv684 (TSE/IDD) |
| Harold W. Clarke, et al.,<br>Defendants. | )<br>)<br>)<br>) | |

MEMORANDUM OPINION

Virginia inmate Leroy Lovelace initiated this pro se civil rights action under 42 U.S.C. § 1983, alleging broadly that defendants, who are employees of Greensville Correctional Center ("GCC") and the Virginia Department of Corrections ("VDOC"), exhibited deliberate indifference to his serious medical needs by routinely failing to provide him with needed medications in a timely fashion. See Dkt. No. 7.

Defendants F. Schilling and E. Pearson, two of the six defendants against whom plaintiff satisfactorily alleged claims upon which relief may be granted, have filed a motion for summary judgment [Dkt. No. 22] and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975) [Dkt. No. 24]. Plaintiff opposes defendants' motion. See Dkt. No. 32.[1] For the reasons explained below, defendants' motion for summary judgment will be granted, and the claims against defendants Schilling and Pearson shall accordingly be dismissed.

---

[1] Plaintiff's opposition has been docketed twice, see Dkt. Nos. 32-33, first labeled as a "Motion for an Order Denying the Motion for Summary Judgment" [Dkt. No. 32] and then simply as a "Brief in Opposition to the Motion for Summary Judgment" [Dkt. No. 33]. This memorandum opinion shall refer to these docket entries interchangeably and simply as "plaintiff's opposition."

I.  **Facts / Background**

Local Civil Rule 56 requires that a motion for summary judgment include a section listing all material facts that the moving party contends are not genuinely disputed. See Local Civ. R. 56(B). The nonmovant must then respond to each assertion of fact, indicating whether he believes that fact is in dispute. Id. When claiming the existence of a dispute, the nonmovant must cite to admissible evidence in the record supporting that claim. Id. The nonmovant's provision of an alternative factual narrative without citation to the record does not demonstrate the existence of a disputed fact; instead, such a response will result in the movant's asserted fact being admitted. See Integrated Direct Marketing, LLC v. May, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015).

Accordingly, to determine the contents of the factual record on which defendants' motion shall be adjudicated, an examination of the admissibility of the evidence offered by the parties as well as the parties' compliance with Local Civil Rule 56 is necessary. In support of their motion for summary judgment, defendants Schilling and Pearson each submitted a sworn affidavit. See Dkt. No. 23. In his opposition, plaintiff submitted: (i) an affidavit signed by a fellow GCC inmate; (ii) a copy of an informal complaint; (iii) a copy of Virginia Department of Corrections Operating Procedure 720.1; (iv) a copy of his prison identification card; and (v) a copy or photograph of his personal calendar. Dkt. No. 32. A review of the parties' submissions demonstrates that the following pieces of evidence are admissible[2] and may be considered in

---

[2] Plaintiff's personal calendar and GCC identification badge do not constitute admissible evidence because plaintiff has failed to authenticate them. See Miskin v. Baxter Healthcare Corp., 107 F. Supp. 2d 669, 671 (D. Md. 1999) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence.") (citing Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)). In any event, these items do not appear to offer any information or evidence not otherwise offered by plaintiff's verified complaint.

2

compiling the list of undisputed facts on which defendants' motion will be decided: plaintiff's verified complaint[3]; the affidavits of E. Pearson, F. Schilling, and Charles Watson—one of plaintiff's fellow inmates at GCC[4]; and VDOC OP 720.1.[5]

Although plaintiff offered some admissible evidence in support of his claims, he largely failed to comply with Local Civil Rule 56. Indeed, in his opposition to defendants' motion, plaintiff expresses doubt as to the veracity of several of the assertions made in defendants' affidavits, but he fails to respond to those assertions in the form required by the Local Rule. Instead of specifically responding to each asserted fact, plaintiff states in a broad and conclusory fashion that genuine issues of fact exist as to (1) whether Schilling and Pearson were aware of his medical needs; (2) whether he has presented enough information to support the finding of an Eighth Amendment violation; and (3) whether Schilling and Pearson were deliberately indifferent to plaintiff's serious medical needs. See Dkt. No. 32, p. 4. In the body of his opposition, plaintiff relies primarily on legal argument and, in large part, fails to cite to admissible evidence in support of his positions. Nevertheless, in deference to plaintiff's pro

---

[3] "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[4] A district court may consider affidavits at the summary judgment stage provided those affidavits are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

[5] Judicial notice is properly taken over VDOC OP 720.1. See Perry v. Johnson, No. 3:10cv630, 2011 WL 3359519, at *3 (E.D. Va. Aug. 3, 2011) (taking judicial notice of a VDOC OP); Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

se status, the record has been scoured for admissible evidence which would support disputes of the facts as presented by defendants.[6]

Presented below are the facts relevant to defendants' motion for summary judgment. The first subsection recounts many of the allegations laid out in plaintiff's complaint and is included only to provide context for defendants' motion; the facts in this section do not constitute part of the undisputed factual record. The second subsection contains the undisputed factual record compiled in accordance with the rules and standards described above:

### A. *Contextual Allegations from Plaintiff's Complaint*

1. After collapsing during a basketball game on April 26, 2009, plaintiff underwent heart treatment and ultimately received an implantable cardioverter defibrillator ("ICD") to treat ventricular tachycardia.

2. At this time, plaintiff was prescribed a host of medications related to his cardiac condition. These medications included metoprolol, simvastatin, lisinopril, and aspirin.

3. In the years that followed, medications were added to and removed from this list or were replaced by different drugs.

4. As a prisoner, plaintiff relied on his custodians to provide him these drugs.

5. Upon being transferred to GCC, plaintiff entered the "Self Meds" program, through which he would be provided a thirty-day supply of medication at once and directed to self-administer the pills.

6. On or about June 1, 2016, plaintiff attempted to pick up his medications and was informed that his prescription for sotalol had been cancelled and replaced with metoprolol, a drug from which plaintiff had previously experienced complications.

7. This issue took two weeks to resolve; plaintiff ultimately received his sotalol prescriptions on or about June 15, 2016.

---

[6] To the extent that evidence is present in the record, though, the duty to highlight it was plaintiff's. See, e.g., Babus v. M/A-COM Private Radio Systems, Inc., No. 6:06cv48, 2007 WL 2288021, at *6 (W.D. Va. Aug. 7, 2007) ("[I]t is Plaintiff's responsibility—not the Court's—to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion.") (internal quotations and citation omitted).

4

8. Plaintiff once more attempted to retrieve his prescriptions on August 13, 2016 and was informed that his "Sotalol tablets had not been ordered." Plaintiff received his prescription on August 17, 2016.

9. On August 31, 2016, plaintiff attempted to retrieve his month-supply of magnesium oxide and was informed that his pills "were not available for pick up." Plaintiff received his tablets three days later.

10. On March 22, 2017, plaintiff requested his thirty-day supply of sotalol and was informed that the pills were not available.

11. On October 27, 2018, plaintiff requested his medications for the month of November and was informed that his "Carvedilol tablets were not available."

12. Plaintiff initiated this action in June 2018 naming, among others, F. Schilling and E. Pearson as defendants.

### B. *Undisputed Factual Record*

13. Defendant Pearson was formerly the Lead Warden at GCC.

14. As Warden, Pearson was responsible for the day-to-day operations of GCC. His responsibilities included responding to Level I offender grievances and ensuring that medical care was available to all offenders. Level I grievances could also be investigated and signed by a designee.

15. Pearson is not a medical doctor and did not make decisions regarding the diagnosis or treatment of offenders' medical needs. Instead, VDOC contracts with licensed doctors to provide comprehensive medical care and treatment to VDOC offenders. Medical judgments always rest with qualified medical personnel who are trained to make medical decisions regarding the care and treatment of inmate patients. Pearson did not intervene in medical decisions.

16. Pearson does not recall Lovelace or any discussion with Lovelace regarding Lovelace's medical concerns.[7]

---

[7] Plaintiff has submitted admissible evidence that supports the proposition that he engaged in a conversation with Pearson regarding plaintiff's medical conditions and concerns as Pearson traveled through plaintiff's pod on or about August 16, 2016. See Dkt. No. 7, ¶ 45; Dkt. No. 32, p. 17 ("Watson Aff."), ¶¶ 8-11. Because this evidence is not incompatible with Pearson's claim that he does not recall a discussion with plaintiff, though, this fact appears in the form offered by defendants. Plaintiff's evidence regarding the encounter between he and Pearson will nevertheless be considered with regard to defendant Pearson's knowledge of plaintiff's medical condition and circumstances.

17. Pearson did not sign the Level I grievance responses that Lovelace referred to in his complaint.

18. Defendant Schilling is the former Director of Health Services for VDOC. He retired from that position on February 1, 2016 but returned to VDOC on February 8, 2018, working as a part-time employee at the Fluvanna Correctional Center for Women.

19. Schilling has no knowledge of Lovelace of his claims. He did not work at GCC and is not a physician. In his prior job as Health Services Director, he did not make any decisions regarding the diagnosis or treatment of an offender's medical needs.

20. Schilling did not intervene in medical decisions but ensured compliance with the medical operating procedures in place at the institutional level and relied on the professional judgment of doctors and nurses at each VDOC facility. Schilling's job was primarily administrative, not medical, in nature.

21. Offenders frequently wrote to Schilling and other members of the Health Services staff regarding medical concerns. In addition to his daily responsibilities, he received a significant number of Level II grievance appeals that required review, investigation, and response within 20 days of their receipt. Those grievances related to medical, mental health, and dental issues inmates faces.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial… by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to

the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

In his complaint, plaintiff alleges only one theory or claim: that, in violation of the Eighth Amendment, each named defendant exhibited deliberate indifference to his serious medical needs by failing to provide his "life-sustaining" medications in a timely manner. See Dkt. No. 7, p. 37. To succeed on an Eighth Amendment claim relating to medical care in prison, plaintiff "must [show] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Thus, plaintiff must satisfy two distinct elements to support a claim. First, he must demonstrate that he has a sufficiently serious medical need. A need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, plaintiff must prove that the defendant was deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)). Significantly, a prisoner's disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

In his complaint, plaintiff does not allege that either Schilling or Pearson were themselves responsible for obtaining the medication he claims not to have been provided. Instead, he seeks to hold these defendants responsible under a theory of supervisory liability based on their administrative roles within GCC and the VDOC. To succeed on a supervisory liability claim, a prisoner-plaintiff must show that the supervisor he seeks to hold liable (1) "had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to the plaintiff, (2) that "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Randall v. Prince George's Cty., 302 F.3d 188, 206 (4th Cir. 2002) (internal quotation marks and citation omitted). With regard to the first prong of this test, establishing the existence of a "pervasive" and "unreasonable" risk of harm "requires evidence that the conduct is widespread, or at least has been used on several different occasions." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). As explained below, plaintiff has not satisfied this burden with respect to defendants Schilling or Pearson.

    A.    *Official Capacity Claims*

The complaint makes clear that plaintiff seeks to sue the named defendants in both their official and individual capacities. See id. at pp. 2-6. As an initial matter, and as defendants correctly argue, to the extent plaintiff seeks monetary relief from these defendants in their official capacities in this § 1983 suit, such claims must be dismissed; neither a state nor its officials acting in their official capacities are "persons" for the purposes of § 1983. See Will v.

8

Michigan Dep't of State Police, 491 U.S. 58 (1989). Plaintiff's individual capacity claims against these defendants are addressed in turn below.

### B. *Defendant Schilling*

Plaintiff's claims against defendant Schilling are easily resolved. Although plaintiff does not, as defendants aver, "concede[] that Defendant Schilling cannot be liable for his claims," see Dkt. No. 34, p. 1, he does not oppose the motion for summary judgment as it relates to Schilling and requests that this defendant be dismissed from this action without prejudice. See Dkt. No. 32, p. 4. Schilling, however, submits that plaintiff's claims against him should be dismissed *with* prejudice. See Dkt. No. 34, p. 1.

Defendant Schilling is correct that the record supports his dismissal with prejudice. Indeed, Schilling has introduced evidence that demonstrates that he was retired from the VDOC for the period of time in which plaintiff's claims arose. See Dkt. No. 23-3 ("Schilling Aff."), ¶ 1. Plaintiff has failed to offer any evidence to call that proposition into question. Accordingly, there is no evidence to suggest that Schilling "had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to plaintiff at the time in question. See Randall, 302 F.3d at 206. Similarly, there is no evidence of an affirmative link between any alleged inaction by Schilling and any injury plaintiff may have accrued. Id. Consequently, plaintiff has failed to establish the existence of a genuine dispute of material fact regarding his supervisory deliberate indifference claim against Schilling, and Schilling is accordingly entitled to the entry of judgment in his favor.

### C. *Defendant Pearson*

In his opposition, plaintiff asserts that he "is suing Pearson ... for his supervisor[y] responsibility that turned a blind eye to a practice ... that allowed and encouraged the" allegedly improper acts of his subordinates. See Dkt. No. 32, p. 5. As was the case with Schilling, the evidence presented is insufficient to prevent summary judgment from entering in Pearson's favor.

In his verified complaint, plaintiff alleges that, "Pearson, as Lead Warden at GRCC, reviews and determines offender grievances with respect to the failure to provide medical care ... in those instances in which a prisoner's complaint ... is not resolved to the prisoner's satisfaction at the informal complaint stage." Dkt. No. 7, ¶ 69. Nevertheless, plaintiff concedes that "Pearson ... avoided direct personal knowledge of" plaintiff's claims regarding the late delivery of his medications. Id.[8] That Pearson was not aware of the contents of plaintiff's grievances is corroborated by plaintiff's other allegations, which repeatedly assert that the grievances he filed were screened by Pearson's "designee" instead of Pearson himself. See, e.g., Dkt. No. 7, ¶¶ 32, 43, 57. Furthermore, the undisputed factual record establishes that Pearson did not sign plaintiff's Level I grievance responses. In his opposition to defendants' motion for summary judgment, plaintiff again concedes that he "attempted to notify Pearson via offender requests to no avail." Dkt. No. 32, p. 8. It is therefore clear from the factual record that Pearson did not have knowledge of his subordinates alleged actions or alleged deliberate indifference through the grievance process.

In his verified complaint, plaintiff twice describes an in-person encounter he had with Pearson on or about August 16, 2016. He alleges first that, on that date, "Plaintiff informed

---

[8] It is unclear how Pearson would have known to avoid knowledge of a situation about which he was unaware.

10

Pearson about the trouble he was experiencing in getting his cardiac preventive medicines timely provided by Shaw and Ellis." Dkt. No. 7, ¶ 45. He claims that Pearson "curtly told Plaintiff to take his complaint to his Housing Unit Manager," which plaintiff claims to have done. Id. Later in his complaint, plaintiff describes the same encounter with Pearson, alleging that, "[i]n addition ... Pearson received a first-hand account about the troubles Plaintiff was experiencing in procuring his medications when Plaintiff talked to Pearson in Plaintiff's pod." Dkt. No. 7, ¶ 69. The affidavit submitted by Charles Watson—a GCC inmate—supports plaintiff's proffered version of events. Watson asserts that plaintiff gave Pearson his prison I.D. card, introduced himself, and informed Pearson about his chronic condition and the risk he faced in not receiving his medications in a timely fashion. See Watson Aff. ¶¶ 8-11.

The record, then, establishes that the only knowledge defendant Pearson had regarding plaintiff's medical condition arose when Pearson walked through plaintiff's pod and was stopped by plaintiff for a brief conversation. This evidence falls short of demonstrating that Pearson possessed the level of knowledge required to find him liable under a theory of supervisory liability. Indeed, plaintiff's account of his single in-person interaction with Pearson is short and lacking any meaningful detail. The record shows that plaintiff informed Pearson of "the trouble he was experiencing in getting his cardiac preventive medicines timely provided," see Dkt. No. 7, ¶ 45, and that plaintiff faced a "potential risk [in] not timely receiving" those medications, see Watson Aff. ¶ 9. These vague allegations do not demonstrate that Pearson was aware of information such as the dates and the number of times plaintiff was not provided his medications in a timely manner, the names of those medications, or their purposes.

Lacking any of this specific information, the record allows only for an inference that Pearson was aware that, on at least one occasion, plaintiff had not been provided his medication

11

on time. This is insufficient to demonstrate Pearson's knowledge of a "pervasive" or widespread pattern of conduct by Pearson's subordinates creating a risk of constitutional injury. As the Fourth Circuit has recognized, "[d]eliberate indifference is a very high standard – a showing of negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, actions that are "unfortunate" or "imprudent" will not suffice to establish deliberate indifference. Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997). At most, plaintiff has alleged that Pearson acted negligently when Pearson failed to investigate plaintiff's oral allegations, relayed in a single conversation. In Mitchell v. Strickland, 87 F.3d 1309 (4th Cir. 1996) (unpublished), the Fourth Circuit held that there was no deliberate indifference by a supervisor where a prisoner raised both oral and written allegations of constitutional violations and only the written grievances were addressed. 87 F.3d 1309 ("It cannot be said, under these facts, that Strickland acted with deliberate indifference to the risk of harm that Brown presented. In any event, this single, isolated incident of alleged improper investigation does not satisfy the heavy burden of proving supervisory liability."). Like the defendant in Mitchell, there is only a "single, isolated incident of alleged improper investigation" by Pearson. Id. Other courts also recognize that a single incident such as that complained of by plaintiff are insufficient to establish supervisory liability based on deliberate indifference.[9] Moreover, far from acting with deliberate indifference, the summary judgment record demonstrates that, upon receiving plaintiff's informal and oral complaint, Pearson listened to plaintiff's complaint and made recommendations about to whom plaintiff should address his grievance so that it might be addressed.

---

[9] See Lenz v. Wade, 490 F.3d 991, 996 (8th Cir. 2007) (holding that awareness of a "single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability"); Thompson v. Upshur Cnty., TX, 245 F. 3d 447, 459 (5th Cir. 2001) (requiring "[p]roof of more than a single instance of the lack of training or supervision causing a violation of a constitutional right").

12

Plaintiff's allegations against Pearson are insufficient to demonstrate that Pearson had knowledge that his subordinates conduct created a "pervasive and unreasonable risk" of a constitutional injury to plaintiff. Shaw, 13 F.3d at 799. Two district court cases from within this Circuit determined that there was no supervisory liability based on similar facts. First, in Irwin v. Broadwell, 2013 WL 1246453 (E.D.N.C. Mar. 27, 2013), the plaintiff sued an assistant superintendent at the prison at which plaintiff was incarcerated for supervisory liability based on deliberate indifference to a serious medical need, regarding an injury to his shoulder. Id. at *2. The plaintiff alleged that he had a conversation with the assistant superintendent in the hallway of the prison and that the plaintiff had informed the assistant superintendent of the delay in treatment from the defendant's subordinates. Id. at *6. The district court granted the assistant superintendent's motion for summary judgment because the plaintiff's "apparently casual and informal conversation with Florence [was] simply insufficient to provide actual or constructive knowledge" of the alleged conduct, by a doctor, posing "a pervasive and unreasonable risk of constitutional injury." Id. Second, in Koon v. Ozmint, 2007 WL 1486067 (D.S.C. May 18, 2007), the plaintiff alleged that the supervisor defendants knew of his issues with obtaining dental treatment and did nothing to address the denial of dental care. Koon, 2007 WL 1486067, at *7. The district court in Koon also rejected plaintiff's supervisory liability claim because "[m]ere awareness of [the] complaint is not sufficient to show knowledge that a subordinate was engaging in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury, which is the first prong of the supervisory liability standard." Id. (quoting Shaw, 13 F.3d at 799) (aff'd sub nom Koon v. Ubah, 280 F. App'x 255 (4th Cir. 2008)). On appeal, the Fourth Circuit found "no reversible error." Koon, 280 F. App'x at 256. Other district courts have reached

13

similar decisions in other cases.[10] Accordingly, plaintiff cannot demonstrate that Pearson had knowledge that his subordinates were engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury that is necessary for supervisory liability.

Plaintiff's many citations to Seventh Circuit and Northern District of Illinois case law—which is not binding authority in this jurisdiction—do not rescue this claim. Those cases are inapposite. For example, in Perez v. Fenoglio, 792 F.3d 768, 781-82 (7th Cir. 2015), Seventh Circuit reviewed the district court's dismissal on a motion to dismiss, not summary judgment. Moreover, in Perez, the defendants had knowledge of the alleged serious medical need based on the plaintiff's "coherent and highly detailed grievances and other correspondences." Id. That is not the case here, where Defendant Pearson only had one brief conversation with plaintiff. Thus, in this case, the record does not demonstrate that Pearson knew of the pervasive and unreasonable risk of a constitutional violation occurring in the first instance.

Further damaging to plaintiff's claim is that he has not introduced any evidence to establish an affirmative link between Pearson's alleged inaction and any injury plaintiff has sustained, the final element of a supervisory capacity claim. See Shaw, 13 F.3d 799. Plaintiff has failed to come forward with any evidence, as is his burden on summary judgment, to establish the "affirmative causal link" between Pearson's alleged inaction, based on this single conversation, and any injury that occurred after that conversation. Id. Although plaintiff alleges in his complaint that he suffered from anxiety, high blood pressure, dizziness, headaches, and an undue risk of heart problems, plaintiff makes no effort to connect any of these alleged medical

---

[10] See also Shelly v. Johnson, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (holding that merely bringing problem to attention of supervisory official is not sufficient to impose liability); Wright v. Lassiter, No. 1:18cv90, 2018 WL 3866590, at *7 (W.D.N.C. Aug. 14, 2018) (dismissing supervisory liability claim against regional director of prisons whom plaintiff claims to have informed of "retaliation and more" in a four-page letter).

issues to any inaction by Pearson. Nor does he provide any information regarding when these alleged symptoms arose. Without such an affirmative link, plaintiff cannot establish a claim for supervisory liability against Pearson. See Thompson v. Director, California Dep't of Corr., 42 F.3d 1402 (9th Cir. 1994) ("If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's constitutional rights.").[11]

****

For the reasons stated above, defendants Schilling and Pearson's motion for summary judgment will be granted. An appropriate order will issue.

Entered this 19th day of May 2020.
Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

[11] Because the record does not support a finding that defendants Schilling or Pearson violated plaintiff's constitutional rights, they are entitled to a finding of qualified immunity as an additional or alternative basis for their dismissal from this action. See Turmon v. Jordan, 405 F.3d 202, 204-05 (4th Cir. 2005).

15